WESTCHESTER FIRE INSURANCE COMPANY, Plaintiff-Appellee, *v.* INDUSTRIAL FIRE AND CASUALTY INSURANCE COMPANY, Defendant-Appellee.—(THOMAS E. RICHARDS, Defendant-Appellant.)

First District (4th Division)    No. 76-871

Opinion filed March 9, 1978.

Kamin, Stanley & Balkin, of Chicago (Frank C. Stanley, of counsel), for appellant.

Purcell & Wardrope, of Chicago (Sidney Z. Karasik and Michael Kreloff, of counsel), for appellee Westchester Fire Insurance Company.

Garbutt, Jacobson and Lee, of Chicago (Jerome J. Jacobson, of counsel), for appellee Industrial Fire and Casualty Insurance Company.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Westchester Fire Insurance Company (Westchester), initiated an action for declaratory judgment, seeking a determination of the extent of uninsured motorists liability due defendant, Thomas E. Richards, under two separate policies of automobile liability insurance issued to members of the Richards family unit by two different companies, Westchester and defendant, Industrial Fire and Casualty Insurance Company (Industrial). Under the "other insurance" clause of its policy, Westchester sought to limit its uninsured motorists liability to a 50-percent pro rata share of the $10,000 maximum payment provided for in its policy with the remaining $5000 chargeable to defendant Industrial. Defendant Richards moved for summary judgment, asking the court to aggregate or "stack" the two policies in order to compensate himself in the amount of $10,000 (the total of the two limits of liability). The complaint further sought to restrain Richards from proceeding with arbitration under his policy with Westchester until the court declared and determined the rights of the parties. The trial court denied Richards' motion for summary judgment and entered judgment in favor of both insurance companies, decreeing that the combined liability on both policies was $10,000, to be prorated in the amount of $5000, chargeable to each of the two insurance carriers. Defendant Richards appeals from this judgment.

We reverse.

The issue presented for review is whether the "other insurance" pro rata clause contained in both policies, which restricted damages to the higher of the limits of liability of the two separate insurance policies, precluded "stacking" or aggregation of the policies.

The facts were stipulated. On October 3, 1972, defendant, Thomas E. Richards, was a passenger in an uninsured automobile driven by Charles Kuwamoto, which vehicle overturned and resulted in injuries to Richards which exceeded $20,000. On this same date, two separate insurance policies pertaining to defendant Richards were in full force and effect. One policy, issued by Westchester, insuring a 1962 Ford Fairlane owned by George Richards, Thomas' father, listed Mr. and Mrs. Richards as the named insureds. The policy provided family protection coverage (uninsured motorists coverage) for the named insureds or any relatives, which included Thomas and his brother. It was stipulated that defendant Richards and his brother were excluded from liability coverage under this policy. The exclusion specifically provided that Thomas and his brother

were excluded from coverage while operating any automobile. The family protection coverage was limited to $10,000 per person, $10,000 per accident. The premiums were paid by George Richards.

A second policy, issued by Industrial, covering the same auto (1962 Ford Fairlane) listed Thomas E. Richards as the named insured. This policy provided identical family protection coverage (uninsured motorists coverage) as that contained in the Westchester policy. The premiums were paid by Thomas Richards. The policy was purchased prior to the purchase of the Westchester policy.

Both policies also contained the following language (from the family protection coverage sections):

"OTHER INSURANCE. With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

Plaintiff Westchester and defendant Industrial agreed that the legal issues are governed by the second paragraph of the "other insurance" provision.

Defendant Richards contends that under the second paragraph of the other insurance provision, commonly known as the pro rata clause, the policies' liability limits should be aggregated and then shared between the companies because (1) the language of the clause contemplates "adding" or "summing up" the liability limits and (2) in fire loss or property damage cases involving pro rata clauses, the liability of the insurer is generally considered to be measured by the proportion that the amount of its policy bears to the total aggregate insurance on the property. Defendant Richards further argues that since both companies collected premiums on the same auto, the policies should be stacked, particularly in light of the fact that Richards' father purchased insurance from Westchester after the purchase of the Industrial policy, paying a full premium, and specifically

contracted with Westchester for uninsured motorists coverage for himself and defendant Richards and which policy excluded defendant Richards from liability coverage.

The insurance companies argue that the language used in the second paragraph is clear and that the liability limit clause contained in such paragraph supports their contention that the maximum coverage available is $10,000. The insurance companies point out that the fire loss/property damage cases cited by defendant Richards only construed the proportional payment clause of the pro rata clause and did not construe the liability limit clause, as none of the insurance policies involved in those contained such a clause. The insurers posit that if such a clause were at issue, it is certain that the results in those cases would have been different.

The insurers further argue that *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247, relied on by defendant Richards, is limited to its facts; in other words, stacking is permissible if one insurance company issues multiple policies to one insured, as the "other insurance" provisions contained in the policies are ambiguous under those circumstances. They continue, arguing that when insurance policies are issued by separate and different companies, the "other insurance" provisions in the policies are unambiguous and, therefore, enforceable under *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 269 N.E.2d 97, and *Morelock v. Millers' Mutual Insurance Association* (1971), 49 Ill. 2d 234, 274 N.E.2d 1.

Some recent Illinois appellate court cases have considered the effect of the "other insurance" pro rata clause on insurance contracts. In *Kaufmann v. Economy Fire & Casualty Co.* (1977), 52 Ill. App. 3d 940, 368 N.E.2d 371, the defendant insurance company issued one policy to Justin and Geraldine Kaufmann and a second policy to Daniel Kaufmann, their son. Daniel was not a member of the household when he purchased the policy, but he was at the time of the accident. Both policies contained family protection coverage and "other insurance" clauses similar to the ones in the instant case. Separate premiums were paid for each policy. Four members of the family were injured by an uninsured motorist. Defendant insurance company attempted to limit plaintiffs' coverage to Daniel's policy asserting that by virture of the other insurance clause contained in the parents' policy, such policy afforded no coverage. The court adopted the rationale of *Glidden* and found that when the same company issued policies to members of the same family, living in the same household, who have paid separate premiums, an ambiguity arises as to the other insurance clause which should be resolved in favor of the insureds. The court held that the coverage under the two policies could be stacked.

In the recent case of *Salerno v. State Farm Mutual Insurance Co.* (1977), 55 Ill. App. 3d 735, 371 N.E.2d 153, the defendant insurance company issued three policies of insurance to the same family unit, one to the daughter (plaintiff therein) and two to her father. The daughter, Janet, was a member of the household at the time the policies were purchased as well as on the date of the accident. The same issue was raised, and the court adopted the rationale of both *Glidden* and *Kaufmann* and stacked the coverage of the three policies. With respect to the character of the "insured," apparently *Glidden* has been expanded by these cases so that now the family unit, as in the instant case, is considered to be an insured.

As already alluded to, one of the leading cases in Illinois on the question of stacking uninsured motorists coverage is *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247, wherein the defendant insurance company had issued three separate policies on three different automobiles to one insured, each policy providing uninsured motorists coverage of $10,000 for each person injured. Notwithstanding the "other insurance" pro rata clause in each policy, the Illinois Supreme Court held that an insured who was struck and injured by an uninsured motorist could stack his coverage and collect up to $30,000. Recently, the Supreme Court of Illinois re-examined *Glidden* and noted that it is not confined to the effects of other insurance clauses upon stacking the coverage contained in separate policies, but, rather, addressed the broader question of the construction of the intent of insureds who pay more than one premium to a single insurer for uninsured motorist coverage. *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 175, 370 N.E.2d 1044, 1047.

■■ In order to resolve the case at hand, we must answer the following question: "What did the parties reasonably contemplate when defendant Richards' parents paid a full premium for additional 'Family Protection Coverage' in light of the fact that defendant Richards was not excluded from this coverage, although excluded from liability coverage, and that he had previously purchased his own 'Family Protection Coverage' on the same car?" Westchester and Industrial do not address this question directly, but urge that defendant Richards' indemnification is limited to $10,000 under both policies as a result of the "other insurance" pro rata clause.

An insurance policy is not to be interpreted in a factual vacuum; it is issued under given factual circumstances. (*Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 336, 312 N.E.2d 247, 250.) Furthermore, when an insurer attempts to limit its liability under the uninsured motorist provision of its policy, such limitation must be construed liberally in favor of the policyholder, and most strongly

against the insurer. *Barnes v. Powell* (1971), 49 Ill. 2d 449, 454, 275 N.E.2d 377, 380; *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 179, 370 N.E.2d 1044, 1049.

We turn our attention to the facts in order to attempt to reconstruct the intent of the parties when they purchased the Westchester policy. The policy was purchased by Mr. and Mrs. Richards subsequent to their son's purchase of the Industrial Fire policy. The policy covered the same automobile as the Industrial Fire policy, *i.e.,* 1962 Ford Fairlane. Defendant Richards and his brother were excluded from the liability portion of the policy while operating the vehicle, but were not excluded under the uninsured motorist coverage portion of the policy. With the exception of the exclusion mentioned, there was constant overlapping coverage between the Westchester policy and the Industrial Fire policy. Mr. and Mrs. Richards paid a full premium for the uninsured motorist coverage contained in the Westchester policy and defendant Richards also paid a full premium for the same coverage contained in the Industrial policy. Viewing the facts as a whole, it is clear that the insureds and their family expected to receive something for their money. Certainly they had no intention of paying Westchester for coverage they were already receiving. *Squire,* at 180.

This "Premium rule" is not novel. Several jurisdictions have adopted some form of this rule (see 7 Appleman, Insurance Law and Practice §4331, N. 5.35 (Cum. Supp. 1977)) which has been stated in several ways. One jurisdiction has noted that the law does not permit insurers to collect a premium for certain coverage and then take that coverage away by a limiting clause, no matter how clear or unambiguous the clause may be. (*Great Central Insurance Co. v. Edge* (1974), 292 Ala. 613, 617, 298 So. 2d 607, 610.) Others have found that it is more just that the insured who has paid a premium should get all he paid for rather than that the insurer should escape liability for that for which it collected a premium. (*Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 180-81, 370 N.E.2d 1044, 1050; *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 336, 312 N.E.2d 247, 250-51; *Van Tassel v. Horace Mann Insurance Co.* (1973), 296 Minn. 181, 187, 207 N.W.2d 348, 351-52.) Even others have explained that it would be unconscionable to permit an insurer offering statutorily required coverage to collect premiums for it with one hand and allow it to take coverage away with the other by using a self-devised "other insurance limitation." (*Simpson v. State Farm Mutual Automobile Insurance Co.* (S.D. Ind. 1970), 318 F. Supp. 1152, 1154; *Blakeslee v. Farm Bureau Mutual Insurance Co.* (1972), 388 Mich. 464, 474, 201 N.W.2d 786, 791; *Fidelity & Casualty Co. v. Gatlin* (Tex. Civ. App. 1971), 470 S.W.2d 924, 927.) Although in most of these jurisdictions the factual settings involved multiple policies issued by one

insurance company, in *Fidelity* the policies were issued by two different insurance companies.

We conclude that under these circumstances, the parties expected to receive an additional $10,000 indemnification under the uninsured motorist coverage provisions when they purchased the Westchester policy and paid a full premium for such coverage. The limitation in the policy is construed against the insurer.

> "It is true that an insured might end up in a case such as this in a better situation than if the wrongdoer had been insured to the minimum requirements of the Financial Responsibility Law. That, however, is not material as long as he pays for the coverage. The insured is better off because he paid additional premiums. If there is to be a 'windfall' in this situation, it should be to the insured, who paid the several premiums, rather than to the insurer, which collected them." *Glidden*, at 336.

■■ We hold that defendant Richards may stack the uninsured motorists coverage of his policy and such similar coverage under his parents' policy and recover $20,000 as a result of his injuries, as it has been stipulated that his injuries exceeded $20,000.

We do not mean to imply that injured parties may be permitted to pyramid separate insurance coverages as to recover more than the actual loss. (*Sellers v. United States Fidelity & Guaranty Co.* (Fla. 1966), 185 So. 2d 689, 692; *Fidelity & Casualty Co. v. Gatlin* (Tex. Civ. App. 1971), 470 S.W.2d 924, 928.) We only mean to say that when, as here, premiums have been paid for two separate policies, it seems both equitable and desirable to permit recovery under more than one policy until the claimant is fully indemnified. See A. Widiss, *Perspectives on Uninsured Motorist Coverage*, 62 Nw. U.L. Rev. 497, 523 n. 95 (1967).

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and judgment in the amount of $20,000 is entered in favor of defendant Thomas E. Richards, to be prorated in the amount of $10,000, chargeable to each insurance carrier.

Reversed and judgment entered.

LINN and DIERINGER, JJ., concur.